IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

PETER J. LONG,

                Plaintiff,                            OPINION AND ORDER

    v.

                                                        16-cv-779-slc

LINDA HARRING, *et al.*,

                Defendants.
_____

*Pro se* plaintiff Peter J. Long is proceeding with a First Amendment retaliation claim against several staff members at Thompson Correctional Center. In this order I am *sua sponte* amending my order on leave to proceed, then I am ruling on the discovery disputes that prompted my re-review of Long's complaint.

In the court's leave to proceed order, I allowed Long to proceed on a "claim[] that Harring retaliated against him for using the prison grievance system to win his cell assignment seniority back when she issued him a warning for wearing Carhartt jeans and conduct report for bringing butters back to his cell," and that the other defendants "either rejected, dismissed, or affirmed dismissal of Long's grievances . . . . because he filed so many grievances." Screening Order, dkt. 11, at 5, 7. Before the court is Long's motion to compel defendants to respond to his First Set of Written Interrogatories and Request for Production of Documents, dkt. 20. (He has also filed a motion for the appointment of counsel to assist him in deposing witnesses, dkt. 23, which I will address in a separate order).

The parties' briefs on their discovery disputes reveal that both sides have a view of this lawsuit that is at odds with the court's screening order and the claims on which I have allowed Long to proceed. Not surprisingly, Long argues that the court construed his claims too narrowly, while defendants argue the opposite. Unfortunately, neither side timely filed a motion to reconsider after the screening order issued, which would have been the best time to flag these

concerns. (Long moved to reconsider that part of my order dismissing his substantive due process claim, but he said nothing about the retaliation claims on which he was allowed to proceed.)

Having now re-read Long's complaint in light of the disputes the parties are presenting now, I find that both sides raise meritorious issues that should be addressed now, so that we can keep this lawsuit on a straight path toward summary judgment motions and trial. Accordingly, as discussed below, I am *sua sponte* ("on my own") REVISING the screening order before addressing the motion to compel.

## BACKGROUND

Long filed his *pro se* complaint on November 28, 2016. After Long consented to my jurisdiction, the case was referred to me on December 23, 2016. On March 21, 2017, I issued an order allowing Long to proceed on two claims: (1) defendant "Harring retaliated against him for using the prison grievance system to win his cell assignment seniority back when she issued him a warning for wearing Carhartt jeans and conduct report for bringing butters back to his cell," and (2) the other defendants "either rejected, dismissed, or affirmed dismissal of Long's grievances . . . . because he filed so many grievances." Screening Order, dkt. 11, at 5, 7. With respect to the latter claim, I noted that Long's claims against Stiefvater, Olsen, Jaeger, Schneiter and Champagne were "shaky at best" but enough to allow him to proceed on a retaliation claim. *Id*. at  I dismissed plaintiff's Fourteenth Amendment claims for procedural and substantive due process.

On April 10, 2017, Long filed a motion for reconsideration, arguing that I had erred in dismissing his substantive due process claim. Dkt. 16. On May 18, 2017, I issued an order

denying the motion. Dkt. 18. In the interim, on April 28, 2017, the Wisconsin Attorney General filed an answer to the complaint on behalf of all defendants. Dkt. 17.

On June 7, 2017, Long served his First Set of Written Interrogatories and Request for Production of Documents on defendants; later that same day, he served one Amended and one New Request for Production. Subsequently, Long filed Second and Third sets of interrogatories, propounding a total of 43 interrogatories on defendants. Br. in Opp., dkt. 22 at 17. Long received responses to his first set of discovery requests from defendants on July 17, 2017, and amended responses on July 24, 2017. It appears that the motion to compel relates only to the First Set of Written Interrogatories and Requests for Production of Documents.

Defendants have objected to most of Long's discovery requests on the ground that the information Long is seeking is not relevant to, or not proportional to the needs of the case. Long insists that defendants' objections are meritless. In addition to asking the court to order the discovery, he asks the court to order defendants to pay him $500 as a sanction for what he argues are non-meritorious objections to many of his discovery requests. Defendants oppose the motion to compel and to award costs.

## DISCUSSION

### I. SCOPE OF LONG'S CLAIMS

#### A. Claims Against Defendant Harring

In the screening order, I found that Long had alleged that Harring had retaliated against him for using the prison grievance system to win his cell assignment seniority back when she issued him (1) a July 2016 warning for wearing Carhartt jeans and (2) a conduct report (CR No. 2735154) for bringing butter back to his cell.

In opposition to the motion to compel, defendants argue they need not provide discovery related to Conduct Report No. 2735154 because it was issued *before* Long began using the ICRS system on March 10, 2016 to file grievances to win his cell seniority back, and therefore could not have been retaliatory. In response, Long insists that his complaint fairly alleged that his protected activity began much earlier. Specifically, Long asserts that his claim against Harring is *not* just that she retaliated against him for using the prison grievance system to win his cell assignment seniority back on or after March 10, 2016, but that she retaliated against him for using the prison grievance system and the courts to file numerous complaints against various TCC staff beginning with his arrival at the institution on September 9, 2015. Br. in Reply, dkt. 26, at 4. Long further asserts that Harring's retaliatory adverse actions did not consist merely of issuing Conduct Report No. 2735154 and meritless warnings about wearing jeans (and other matters), but also included (1) conducting "excessive" cell searches, (2) denying his move into a single cell on March 9, 2016, (3) moving him to the bottom of the seniority list, and (4) issuing a Conduct Report in July 2016 (#2717620) for wearing Carhartt jeans. Reply Br., dkt 26, at 3.

I agree that the allegations in the complaint support a broader retaliation claim against Harring than described in the screening order. With respect to Long's constitutionally protected activity, Long alleged that: Harring retaliated against him for filing "inmate complaints against TCC staff, including defendant Linda Harring," while incarcerated at TCC,¶40; he filed an inmate complaint alleging that Harring was retaliating against him because he "write[s] a lot of ICI's at TCC and [] represent[s] [him]self *pro se* in several civil lawsuits against DOC employees," ¶42; Harring retaliated against him "for his continued use of the ICRS against TCC staff," ¶56;

4

and "Defendant Harring was upset with plaintiff Long for all the inmate complaints he filed against her and other TCC staff . . .", ¶143. Reading these allegations generously, the complaint fairly alleges that Long's protected activity was the filing of inmate complaints against various TCC staff beginning in September 2015 and not merely the complaints he filed against Harring on or after March 10, 2016. Indeed, defendants appear to acknowledge as much, insofar as they "have responded to the discovery that bears upon what Harring knew about Long's inmate complaints prior to March 10, 2016," notwithstanding their objections. Br. in Opp., dkt. 22, at 6.

I further agree that the complaint alleges a broader range of retaliatory adverse actions by Harring than identified in the screening order. The complaint recited an inmate complaint (TCC-2016-5529) in which Long alleged that, in retaliation for his filing of numerous inmate complaints, Harring searched his cell excessively, issued warnings for having items on his desk and an extra box of legal documents, searched only his cell and not those of other inmates on March 9, 2016 and denied his move into a single cell. Complaint, dkt. 1, ¶42. He also alleged that Harring moved him to the bottom of the TCC Seniority list. *Id.*, ¶90. Some of these actions appear to have been merely the application of standard prison regulations which cannot amount to an adverse action sufficient to maintain a retaliation claim, *see, e.g., West v. Kingsland*, ⎯⎯ Fed. Appx. ⎯⎯, 2017 WL 579389 (7th Cir. 2017) (holding that cell search did not constitute an adverse action where prison regulation required cells to be searched monthly if not more often) (citing *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007) (explaining that routine activities are not materially adverse actions suggesting retaliation). However, being subjected to cell searches more frequently than other inmates and to loss of

5

privileges such as seniority and a single cell assignment arguably could deter a person from complaining or filing grievances in the future. Accordingly, I shall amend the screening order to allow Long to proceed on these claims.

Finally, there is the issue of Conduct Report No. #2717620, which Long alleges Harring issued against him in July 2016 for wearing Carhartt jeans. In the screening order, I referred to this as a "warning," but a review of the complaint reveals that it was a disciplinary charge that was dismissed. Complaint, dkt. 1, ¶126 (quoting inmate complaint where Long complained that Harring was "harassing him in retaliation for [his] use of the ICRS" by writing him a "meritless Conduct Report #2717620."), ¶129 (noting conduct report was "reviewed by TCC Supervisors and . . . dismissed.") Defendants argue that Long should not be allowed to proceed on this claim because "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." Br. in Opp., dkt. 22, at 8 (quoting *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)). I might agree with defendants if the unjustified disciplinary charge was Harring's only act, but Long alleges harassment by Harring "in a variety of ways over a period of several months," which could deter a person of ordinary firmness from exercising his First Amendment rights. *Bridges*, 557 F.3d at 552.

In sum, in response to the concerns raised by the parties in the context of the motion to compel and to provide further guidance moving forward, I am *sua sponte* REVISING the screening order to read:

> Plaintiff is allowed to proceed on a claim that defendant Harring retaliated against him for using the prison grievance system to file complaints against TCC staff, including Harring, by conducting excessive and targeted cell searches, writing meritless written warnings on his Face Card, writing meritless conduct reports (Nos. 2735154 and 2717620), denying his move to a single cell and removing his seniority.

### B. Re-screening Long's Claims Against Defendants Stiefvater, Olson, Jaeger, Schneiter and Champagne

These five defendants object to providing *any* discovery to Long on the ground that Long should not have been allowed to proceed against them in the first place because their only role was to dismiss or reject Long's inmate complaints. *See, e.g.,* Br. in Opp., dkt. 22, at 20 (arguing that motion to compel should be denied because Long "has not stated a plausible claim for retaliation against those defendants."). Defendants point out that "[a] prison official's failure to follow the institution's grievance procedure or to sustain a grievance simply does not give rise to a constitutional claim," even if that claim is labeled as a "retaliation" claim. Br. in Opp. dkt, 22, at 18 (citing *Brown v. Wexford Health Sources*, No. 14-CV-1122-NJR, 2014 WL 7014111, at *4–5 (S.D. Ill. Dec. 11, 2014)). These defendants further note that the complaint is bereft of any allegations of retaliatory motive by defendants Stiefvater, Olson, Jaeger, Schneiter and Champagne or actions taken by these defendants that would likely deter First Amendment activity in the future. *Id*. at 19-20.

Defendants make a persuasive case that I erred when I granted Long leave to proceed on retaliation claims against defendants Stiefvater, Olson, Jaeger, Schneiter and Champagne. My recent review of the complaint leads me to conclude that Long is *not* asserting a retaliation claim against these defendants. Rather, the thrust of Long's allegations is that these defendants failed to intervene to stop the retaliation by Harring. Complaint, dkt. 1, ¶190 ("[T]he remaining defendants knew about defendant Harring's retaliatory harassment of plaintiff Long to include facilitated it, approved it, condoned it, and turned a blind eye for fear of what they might have seen and dismissed, or contributed to the dismissal, of plaintiff Long's inmate complaints");

7

¶191 ("Defendants Stiefvater, Olson, Jaeger, Schneiter and Champagne were aware of Harring's pattern of retaliation but took no steps to prevent it from occurring"); ¶150 ("Defendants were clearly aware of the continued pattern of retaliatory harassment/staff misconduct by defendant Harring . . . because they were brought to the attention of supervisory staff and investigated pursuant [to] Chapter 310, Wis. Adm. Code"). Indeed, Long sums up his claim as follows:

> The plaintiff's allegations support an inference that defendant Harring engaged in repeated harassment after plaintiff filed grievances against her, and that the other defendants failed to intervene to stop Harring's retaliation, despite being asked by plaintiff repeatedly to do so.

Plt.'s Br. in Supp. of Mot. for App. of Counsel, dkt. 24, at 10.

Thus, although labeled in his complaint as a "retaliation" claim, what Long actually is alleging against the non-Harring defendants is a failure to intervene to prevent Harring's retaliation. Accordingly, I am re-screening Long's complaint, *sua sponte*, using that legal framework:

A prison official "can be held liable under § 1983 if [he] (1) had reason to know that a fellow officer was . . . committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). In his complaint, Long alleges that he filed three inmate complaints in which he alleged that Harring was retaliating against him or harassing him: TCC-2016-5529, TCC-2016-16821 and TCC-2016-16866. Each of these complaints was reviewed and dismissed by defendant Stiefvater, who was TCC's Inmate Complaint Examiner and defendant Harring's immediate supervisor. Steifvater's decision in Complaints 5529 and 16821 were reviewed by defendant Jaeger, who was TCC's Inmate Complaint Reviewer and Harring's "intermediate" supervisor.

The decision in 16866 was reviewed by defendant Olson, who was also Harring's "intermediate" supervisor. Defendants Schneiter, the warden of the Wisconsin Correctional Center System, and Champagne, the deputy warden, were not involved in the grievance process with respect to these complaints. However, Long wrote to Champagne and told her that Harring was retaliating against him because he files a lot of inmate complaints. Complaint, dkt. 1, exh. 13.

Long has no plausible failure-to-intervene claim against Schneiter or Champagne. "Public officials do not have a free-floating obligation to put things to rights" and are entitled to assign responsibility for certain tasks to others. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Even assuming these defendants received Long's letter complaining of alleged harassment by Harring, they were entitled to refer Long to the inmate grievance process and to relegate to TCC's complaint examiners the task of investigating that claim. Put another way, given Schneiter and Champagne's roles in the correctional system, neither one of them had a realistic opportunity to prevent Harring's retaliation.

Further, the doctrine of *respondeat superior* does not apply to § 1983 actions, meaning that Long cannot sue Champagne or Schneiter merely because they had ultimate supervisory authority over Harring. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Accordingly, the court erred by granting Long leave to proceed on his claims against these defendants. I am correcting this error by dismissing these claims.

Long's allegations against Stiefvater, Jaeger and Olson are weak, but they suffice to state a plausible claim. Although a defendant who rejects an administrative complaint about a completed act of misconduct does not violate the Constitution, *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007), liability under § 1983 may be imposed on defendants for on-going

9

misconduct if they knew about it and facilitated it, approved it, condoned it, or turned a blind eye to it for fear of what they might see. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Perez v. Fenoglio*, 792 F.3d 768,781-82 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.") Stiefvater was Harring's direct supervisor. Long informed each of these defendants about Harring's alleged harassment through the grievance process, making it reasonable to infer that they were aware of Harring's claimed retaliation against Long. Further, Long alleged that Harring was "harassing" him, which implies an ongoing course of conduct. In the face of such allegations, these defendants arguably had the ability to intervene because they were Harring's supervisors and they were inmate complaint examiners.

Long should be aware that, although his allegations are enough to survive the screening stage, they are not sufficient to prove his claim at summary judgment or at trial. In order to succeed on a failure to intervene theory, Long must prove not just that he told Stiefvater, Jaeger and Olson that he was the victim of retaliation, but that they *believed* that Harring retaliated against him. "Prison officials are not constitutionally required to believe a prisoner over an officer." *Bouman v. Robinson*, No. 07-C-367-C, 2007 WL 5559324, at *5 (W.D. Wis. Aug. 10, 2007) (citing *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)). Thus, if Stiefvater, Jaeger or Olson denied petitioner's grievance because they found his allegation of retaliation to be

unconvincing, they did not violate his constitutional rights simply because they did not take his side.

In sum, the screening order is amended, *sua sponte*, to read as follows:

> Plaintiff is allowed to proceed on a claim that defendants Stiefvater, Olson and Jaeger failed to intervene to prevent Harring's retaliation against plaintiff. Because plaintiff fails to state a plausible claim against defendants Schneiter and Champagne, the claims against these defendants will be dismissed.

Against that backdrop, I turn to Long's discovery requests.

## II. MOTION TO COMPEL

Fed. R. Civ. P. 26(b)(1) allows parties to obtain discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Evidence need not be admissible in evidence in order to be discoverable. Fed. R. Civ. P. 26(b)(1).

### Interrogatories Nos. 3-8

These interrogatories seek the job duties of Stiefvater, Olson, Jaeger, Schneiter and Champagne, and the "names, titles, and duties of all staff at TCC, other than defendants, who have responsibility for ensuring inmates' safety, preventing DOC staff misconduct, and preventing retaliatory harassment against inmates for their use of the Inmate Complaint

Reporting System." Long is entitled to the job duties for Harring, Stiefvater, Jaeger and Olson only. The rest of the requested information is irrelevant to the claims on which Long has been allowed to proceed, it is overbroad and it is disproportionate to the needs of this case.

**Interrogatory No. 9**

Long seeks "the names, titles, and duties of all staff members at TCC, who have responsibility for responding to, investigating or deciding inmate complaints." This request is overbroad. Long is entitled to discover (and already should know) the names and titles of the staff members who actually responded to, investigated or decided the three inmate complaints that he filed against Harring and that are identified in his complaint. Defendants report that they already have produced the ICE reports for these complaints. No further production is necessary.

**Interrogatory No. 10**

Long seeks "the procedure in effect during 2015 and 2016 at TCC for responding to, investigating and deciding inmate complaints." Defendants have represented that the procedure is set forth in Wis. Admin. Code ch. DOC 310. To the extent that any other procedure exists, defendants must produce it, but for 2016 only. This is because Long does not allege in his complaint that any inmate complaints that he filed in 2015 were not properly investigated.

**Interrogatory No. 11**

This interrogatory seeks information about "all civil lawsuits" filed against each defendant in his or her capacity as a DOC employee. The fact that a lawsuit has been filed against

12

someone doesn't provide useful information; the fact that a person has been found liable in a lawsuit alleging similar conduct *does* provide useful information. So, Long is entitled to know if any of the defendants have had a civil judgment entered against him or her on a claim of retaliating against an inmate (or some substantially similar claim), and if so, the State must disclose the case name, case number and the court in which the judgment was entered. Beyond that, Long's request is overbroad.

**Interrogatory Nos. 12-14**

In these interrogatories, Long asks what punishments Harring could have imposed under Wis. Admin. Code § DOC 303.70 under various scenarios. As Long sees it, Harring's directive that he not be moved to the available single cell amounted to a "punishment" imposed before he was found guilty of anything and was an abuse of Harring's authority.

Although defendants likely dispute Long's characterization of Harring's order as punitive, Long is entitled to develop evidence on this theory. Whether Harring exceeded her authority in denying Long's move to a single cell is arguably a relevant brick in the evidentiary wall of proving retaliation. Accordingly, defendants must answer these interrogatories.

**Interrogatory Nos. 15-20**

These questions relate to the timing of the issuance of Conduct Report No. 2735154 and to Long's assertion that he was "forced [by Harring] to start his punishment" for the violation before he was found guilty. *See* Reply Br., dkt. 26, at 16. Again, although perhaps only marginally relevant, Long is entitled to pursue this theory to support his retaliation claim. Accordingly, defendants must answer these interrogatories.

**Interrogatory No. 21**

This interrogatory asks if defendant Olson wrote on an Interview/Information Request form dated 11/15/15 that Long had permission to wear Carhartt jeans at TCC and that Olson would inform staff of this fact. Defendants must anwer this interrogatory. If such a document exists and if defendant Harring saw it or was informed by Olson that Long could wear his Carhartt jeans, then this would be relevant to determining whether Harring wrote her conduct report and warnings about the jeans as retaliation against Long for using the ICRS system.

**Interrogatory Nos. 22-23**

These interrogatories ask why Harring issued Conduct Report No. 2717620 and why Olson dismissed it. Defendants have responded that they have no record of CR No. 2717620 having been issued against Long. Defendants are to conduct one more search for this conduct report. In addition, Harring and Olson must respond, respectively, to the interrogatories, by stating whether they remember this report being issued (even if no copy can be found).

**Interrogatory Nos. 24-29**

These interrogatories seek information regarding the TCC Seniority List and the assignment of single cells. Long alleges that Harring intentionally violated the seniority policy and wrongfully denied him a single cell assignment in retaliation for his use of the ICRS. Information about this policy is relevant to this claim. Defendants must answer these questions.

**Interrogatory No. 30**

Long asks why the TCC Seniority List was taken down by TCC staff on March 9, 2016 and not re-posted. Long does not allege that the removal of the list would have deterred future First Amendment activity, and he does not otherwise explain how removal of the list would be relevant to his claim against Harring. Defendants need not respond at this time.

**Interrogatory No. 31**

This interrogatory asks who directed that Long not be placed in a single cell on March 9, 2016. Long alleges that it was Harring and that she did so in violation of institution policy. This information is relevant and must be produced.

**Request for Production No. 1**

This request seeks "copies of any and all grievances, complaints, or other documents received by defendants Stiefvater and Olson or prison staff or his agents at TCC concerning the plaintiff, and any memoranda, investigative files, or other documents created in response to such complaints." In his letter to defendants' counsel, Long explained that he filed complaints using the ICRS against TCC staff and policies which he won, but the complaints were not properly logged by Olson and Stiefvater. Dkt. 20-5 at 21.

This request is overbroad and it is not proportional to the needs of the case. Copies of complaints that Long says were not properly logged and processed are not relevant to showing that Harring was aware that Long filed grievances against TCC staff prior to March 9, 2016, or showing that Harring's actions taken against Long were in retaliation for those grievances or that Stiefvater, Olson or Jaeger failed to intervene to prevent Harring's retaliation.

**Request for Production No. 3**

This request seeks documents related to Conduct Report No. 2717620. Defendants must undertake one more search for these documents.

**Request for Production Nos. 4-7**

These requests seek information relating to the TCC Seniority List and the assignment of single cells. As discussed above, this information is arguably relevant. Defendants must produce these documents if they exist.

**Request for Production Nos. 10-12**

These requests seek "copies of any and all documents created by any TCC staff member or any other Wisconsin Department of Corrections ("DOC") or WCCS employee or official, regarding and/or in response to" Inmate Complaints Nos. TCC 2016-5532, TCC-2016-7058, and TCC-2016-11154. These inmate complaints did not allege retaliation by Harring. They involve claims on which Long was denied leave to proceed. Accordingly, the information sought in this request is irrelevant and need not be produced.

**Request for Production No. 15**

This request is the same as Nos. 10-12, except that Long seeks copies of documents generated regarding or in response to ALL inmate complaints filed by Long at TCC from March 10, 2016 through August 23, 2016. This request has some traction but it is overbroad. The only inmate complaints that are relevant to the retaliation claims on which Long has been allowed to proceed are the three complaints that Long identified in the complaint in which he

complained of harassment/ retaliation by Harring. Also relevant would be inmate complaints filed by Long prior to March 10, 2016, but only if Harring was aware of them, or could have been made aware of them. Within these parameters, defendants must produce the documents.

**Request for Production Nos. 16-22**

In these requests, Long seeks copies of emails generated or sent or received by any of the defendants regarding the inmate complaints identified in Long's complaint as well as "any and all other inmate complaints . . . which were filed by plaintiff Long while incarcerated at TCC . . .". Defendants have produced all of the emails they were able to locate in the DOC's email archive system based on a search of the terms "Peter Long" and "Linda Harring." This is a sufficient response to Long's request. Restricting production to emails concerning Long and defendant Harring ought to capture the relevant documents and is proportional to the needs of the case. To the extent that Long seeks emails beyond those parameters, his request is denied at this time.

**Request for Production No. 23**

This request seeks "any and all policies, directives, or instructions to DOC staff at TCC concerning the Inmate Complaint Reporting System ('ICRS') that were in effect during 2015 and 2016." This request is worded too broadly. Defendants must produce copies of any written policies, directives or instructions to TCC staff that concerns the procedure in effect at TCC in 2016 for "responding to, investigating and deciding inmate complaints," as Long requested in Interrogatory No. 10.

**Request for Production Nos. 24-25**

In these requests, Long seeks copies of TCC cell inspection logs for his own cell as well as all other inmates housed in the "New Building" from September 9, 2015 through August 23, 2016. He also seeks "a copy of any and all documentation regarding the individual cell/room searches" performed by TCC staff of his cell during that time frame. Long says he needs these documents to show that his cell was searched more frequently than those of other similarly situated inmates. Pursuant to the amended screening order, this information is relevant and must be produced. The State may redact sensitive or confidential information from the responsive documents so long as the unredacted information allows Long to compare and contrast the frequency with which his cell was searched with the frequency with which other cells were searched.

**Request for Production No. 27**

Long seeks "a copy of defendant Harring's work schedule at TCC from September 9, 2015 through August 31, 2016." Long says he needs this information to show that "Harring targeted him with non-random and excessive cell/room searches in a non-proportional ration [*sic*] related to her work schedule[.]" Dkt. 20-5, at 44. Defendants should produce this information in light of the amended screening order.

**Request for Production No. 30**

Long seeks a copy of defendant Stiefvater's work schedule at TCC from July 20, 2016 through August 31, 2016. This request is overbroad. Although Long says he needs this information to show that Stiefvater "allowed" Harring to retaliate against Long, dkt. 20-5, at 45,

the last alleged act of retaliation by Harring was the issuance of conduct report No. 2717620, which Long alleges was issued on July 26 or 27. Thus, Stiefvater's work schedule after that date is irrelevant. Defendants should, however, produce Stiefvater's work schedule from July 20 through July 27, 2016.

**III. RULE 37(a)(5) COST-SHIFTING**

Because the motion to compel will be granted in part and denied in part, I decline to order cost shifting. *See* Fed. R. Civ. P. 37(a)(5)(C). Each side shall bear its own costs incurred in connection with this motion.

That said, I caution the State against repeating in other cases its grounds for refusing to provide discovery here. If the State thinks the court erred in granting leave to proceed on a certain claim against a certain defendant, then it must either move for reconsideration or accept the ruling and soldier on. It is *not* the State's prerogative to refuse to provide discovery on claims for which the court has granted leave to proceed. That sort of passive/aggressive conduct could lead to sanctions surpassing mere cost-shifting.

# ORDER

IT IS ORDERED THAT:

1. This court's screening order dated March 19, 2017 is AMENDED as follows:

Plaintiff is allowed to proceed on a claim that defendant Harring retaliated against him for using the prison grievance system to file complaints against TCC staff, including Harring, by conducting excessive and targeted cell searches, writing meritless written warnings on his Face Card, writing meritless conduct reports (Nos. 2735154 and 2717620), denying his move to a single cell and removing his seniority.

Plaintiff is allowed to proceed on a claim that defendants Stiefvater, Olson and Jaeger failed to intervene to prevent Harring's retaliation against plaintiff. Because plaintiff fails to state a plausible claim against defendants Schneiter and Champagne, the claims against these defendants must be dismissed.

2. The claims against defendants Schneiter and Champagne are DISMISSED WITH PREJUDICE for failure to state claims for which leave to proceed may be granted.

3. Plaintiff Long's motion to compel, dkt. 20, is GRANTED IN PART and DENIED IN PART, as set forth in the body of this order.

4. Each side shall bear its own costs incurred in connection with this motion.

Entered this 5th day of December, 2017.

BY THE COURT:

/s/
STEPHEN L. CROCKER
Magistrate Judge